Eldon L. **BERGESON, individually and as administrator of the estate of Sheryl L. Bergeson, deceased, Plaintiff,**

v.

Edward K. **DILWORTH and Nathan O. Dilworth, Defendants.**

Civ. A. No. 87–1579–T.

United States District Court, D. Kansas.

May 25, 1990.

Donald E. Shultz, Shultz & Shultz, Dodge City, Kan., Bradley Post, Post, Syrios, Wichita, Kan., for plaintiff.

Darrell L. Warta, Foulston & Siefkin, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court upon defendants' motion to amend judgment by remittitur. After a jury trial in this case, judgment was entered on May 3, 1990 in the amount of $256,795.33 actual damages and $500,000.00 punitive damages against both defendants. Defendants move for a remittitur only as to the punitive damage award.

This action arises from a highway accident near Marion, Kansas involving the defendants and Sheryl Bergeson. At approximately 10:15 p.m. on September 4, 1986, Sheryl was driving northbound when her car met two southbound vehicles driven by the defendants. The defendants had been working together on a project at Lake Marion for the Army Corps of Engineers and were driving to Cherryvale to begin a new project for the Army Corps. Edward Dilworth was driving a 1973 freightliner and was followed by his son Nathan in a three-quarter ton Ford pickup. Nathan was pulling a homemade trailer onto which both defendants had loaded a "backhoe" weighing over 5 tons. Sheryl had just passed the freightliner when her car collid-

ed with the trailer being pulled by Nathan. Apparently, the trailer had crossed the center line, and Sheryl was unable to avoid collision. Sheryl sustained massive injuries and was pronounced dead at the hospital. Shortly before trial, defendant Nathan Dilworth admitted 100% liability for the accident but continued to dispute both the amount of claimed actual damages as well as the appropriateness of punitive damages. Defendant Edward Dilworth denied all liability and damages.

■ In a diversity action, the court must consider the propriety of a punitive damage award with reference to those factors under which state law deems such an award appropriate. *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1448 (10th Cir.1987), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988). Whether to grant a remittitur, however, is a procedural matter governed by federal law. *Id.; England v. Gulf Western Mfg. Co.*, 728 F.2d 1026, 1029 (8th Cir.1984). Where the only error is in the excessiveness of an award that itself is not the result of passion or prejudice, the court may order a remittitur. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d 1152, 1168 (10th Cir.1981) (en banc) (plurality opinion), *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1162 (10th Cir.1985). In addressing a claim of excessive punitive damages, the court must consider "whether the punitive award was so excessive that it shocks the judicial conscience or leads to an inescapable inference that it resulted from improper passion or prejudice on the part of the jury." *Malandris*, 703 F.2d at 1177. The decision of whether to grant a remittitur rests within the broad discretion of the trial court. *Garrick v. City and County of Denver*, 652 F.2d 969, 971 (10th Cir. 1981). *Malandris*, 703 F.2d at 1184 n. 1 (Seymour, J. and McKay, J., concurring and dissenting).

The court is also mindful that under Kansas law, "[w]hether to award punitive damages and in what amount is for the jury to determine." *Folks v. Kansas Power &*

*Light Co.*, 243 Kan. 57, 76, 755 P.2d 1319, 1335 (1988). The standards governing punitive damages in Kansas are set forth in *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 738 P.2d 1210 (1987):

> Punitive damages may be awarded whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, Syl. ¶ 16 [681 P.2d 1038]. Punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to "restrain and deter others from the commission of like wrongs." 235 Kan. 387, Syl. ¶ 17 [681 P.2d 1038].

241 Kan. at 481, 738 P.2d at 1239. In reviewing a jury's punitive damage award, the relevant factors include:

> the actual damages sustained, the actual damage award, the circumstances of the case (the nature, extent, and enormity of the wrong), the intent of the party committing it, the relative positions of the plaintiff and the defendant, the defendant's financial worth and the plaintiff's probable litigation expenses.

*Folks*, 243 Kan. at 78, 755 P.2d at 1336.

■ The jury's award of punitive damage in this case is not so excessive as to shock this court's judicial conscience and is supported by the evidence. There was sufficient evidence to support the conclusion that both defendants actually knew of the grave danger posed by the pickup/trailer combination and yet wantonly proceeded to expose other drivers on the highway to this danger. The trailer brakes were not functional at the time of the accident, and evidence indicated that they had been in this condition for some time. *See Austin v. C & L Trucking, Inc.*, 610 F.Supp. 465 (D.Nev.1985) (where knowledge of absense of truck brakes alone was sufficient to justify jury's award of punitive damages). Both defendants had loaded the backhoe onto the trailer. After driving a short distance, Nathan had noticed that the trailer was "back-heavy," and the two defendants stopped and shifted the load. Nathan testi-

fied that he knew of the increased danger of "whipping" that could result from pulling a heavy load on the hilly terrain at the scene of the accident. There was also evidence that Edward had a view of the pickup in his rear view mirror, indicating that Edward was also aware of the swaying of the trailer. Most significant of all was the testimony of Mrs. Koslowsky. This witness testified that she had passed the two Dilworth vehicles shortly before the time of the accident, and that the second vehicle was swinging dangerously back and forth across the center line. Moreover, the accident occurred at night on a two-lane highway with no shoulder, giving Sheryl no opportunity to take evasive action. Her position was one of complete dependence on the responsibility of defendants to drive their vehicle in a safe manner and condition. *See Kindellan v. Arwood Material Co.*, 338 F.Supp. 1210 (E.D.Tenn.1972) (punitive damages appropriate for injuries caused by driving overloaded truck with inadequate brakes).

■ The state of knowledge of each defendant at the time of the accident was also indicated by certain obfuscatory conduct of the defendants after the accident. Nathan accused one of the volunteer workers at the scene of the accident of being drunk, and his father Edward made the same accusation against all the officers investigating the accident as well as the driver of a vehicle who was unable to avoid a second collision with the pickup after it had come to rest on the highway. Edward also made numerous attempts to shift the blame for the accident to Sheryl Bergeson, including statements that Sheryl was either asleep or trying to commit suicide by crossing the center line. From this conduct the jury could properly infer that the Dilworths were attempting to conceal their knowledge of the danger existing at the time of the accident. *See Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, 665 P.2d 730, syl. ¶ 12 (1983); Fed.R.Evid. 404(b).[1]

■ Contrary to defendants' assertion, a plaintiff is not bound by the amount of relief requested in the complaint. *Menne v. Celotex Corp.*, 861 F.2d 1453, 1474 (10th Cir.1988); *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 729 (1st Cir. 1984); *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1437 (9th Cir.1984); *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.*, 531 F.2d 910, 919 (8th Cir. 1976); *Gillespie v. Brewer*, 602 F.Supp. 218, 223 (N.D.W.V.1985); *see also* Fed.R. Civ.P. 54(c). If the evidence is sufficient to sustain an award higher than that requested in plaintiff's pleadings, the complaint is considered amended to conform to proof. *Kizziar v. Dollar*, 268 F.2d 914, 918 (10th Cir.1959). Defendants also bring to the court's attention the absence of any evidence as to the defendants' net worth. Kansas law permits but does not require that a plaintiff produce evidence of a defendant's financial condition in order to justify the size of a punitive damage award. *Folks*, 243 Kan. at 75, 755 P.2d at 1334. Nor is there any prescribed ratio of actual to punitive damages to which a given judgment must conform. *Id.* at 77, 755 P.2d at

---

1. The court realizes that Edward Dilworth's liability for actual and punitive damages was contingent upon proof of either plaintiff's partnership or "joint venture" theory. *Grimm v. Pallesen*, 215 Kan. 660, 527 P.2d 978 ¶ 1 (1974) (partnership); *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816 (1979) (joint venture). If plaintiff established an agency relationship under either theory, then both defendants would be liable for both punitive and compensatory damages as joint managing partners in a business enterprise. *Kline v. Multi–Media Cablevision, Inc.*, 233 Kan. 988, 666 P.2d 711, syl. ¶ 4 (1983); *Modern Air*, 226 Kan., 596 P.2d at syl. ¶ 4 (each member of joint venture acts as both principal and agent of his coadventurer); Pattern Instructions for Kansas

2d 7.08 (1977); *see also Sizemore v. Hall*, 148 Kan. 233, 238, 80 P.2d 1092 (1938) (indicating that under theory of "automobile joint venture," driver of second car may be liable for damage caused by first car if the very act of driving first car is negligence, and if second driver has some voice in deciding whether first car will be driven). The evidence indicated, however, that Edward also had actual knowledge of the dangerous condition of the trailer, and that Edward and Nathan were "actors in concert." *American Family Mutual Ins. Co. v. Grim*, 201 Kan. 340, 345, 440 P.2d 621 (1968); *Restatement (Second) of Torts* § 876 (1979). Thus, Edward's knowledge was also relevant to the issue of punitive damages.

1335; *Iola State Bank v. Bolan,* 235 Kan. 175, 193, 679 P.2d 720, 735 (1984). Before reducing the actual damages as required by statute,[2] the punitive damage award in this case was approximately 25% larger than the actual damage amount. After the statutory reduction, punitive exceed actual damages by 2 to 1. Considering all the relevant factors and the evidence as a whole, the court finds the punitive damage award to be reasonable. The condition of the trailer, the testimony of a disinterested eyewitness, and the admitted knowledge and subsequent conduct of defendants all indicate that defendants willfully and wantonly operated a moving hazard on a public highway in utter disregard for the consequences of their actions. Accordingly, the court will not disturb the jury's award.

▇ Defendants have also requested that they be allowed to deposit with the clerk a check from defendants' insurance carrier in the amount of their policy limit of $200,000.00. The court construes this as a motion to deposit funds with the court pursuant to Fed.R.Civ.P. 67. Counsel has informed the court that defendants do not intend to move for a stay of execution pending appeal at this time. Until defendants do make such a motion, the court will not grant defendants leave to deposit any funds with the court. Thus, the court will deny defendants' motion. For purposes of any future deposits with the court that defendants may intend to make pursuant to a motion under Fed.R.Civ.P. 62, the court directs counsel's attention to D.Kan.Rule 126. Any terms or conditions that defendants may seek to impose upon any future security would of course be ineffective to alter their judgment obligations. *See Burghart v. Frisch's Restaurants, Inc.,* 865 F.2d 1162 (10th Cir.1989).

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for remittitur of punitive damages be denied.

IT IS FURTHER ORDERED that defendants' motion for leave to deposit funds with the court be denied.

---

**2.** The actual damage award consisted of $100,-221.50 under plaintiff's survival action, together with $56,573.83 pecuniary and $250,000.00 non-pecuniary damages under the wrongful death claim. Pursuant to the statutory limit imposed by K.S.A. § 60–1903(a) (Supp.1989), the court reduced the non-pecuniary damages by $150,-000.00.