Eldon L. **BERGESON**, individually and as Administrator of the Estate of Sheryl L. Bergeson, Deceased, Plaintiff,

v.

Edward K. **DILWORTH**, and Nathan O. Dilworth, Defendants,

**State Farm Mutual Automobile Insurance Company, Garnishee.**

Civ. A. No. 87–1578–T.

United States District Court, D. Kansas.

Oct. 24, 1990.

Donald E. Shultz, Shultz & Shultz, Dodge City, Kan., Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., for plaintiff.

Darrell L. Warta, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants.

Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for garnishee.

## MEMORANDUM AND ORDER

THEIS, District Judge.

Presently before the court are post trial motions to stay garnishment proceedings pending appeal; to vacate sanctions imposed upon defendants' counsel by the magistrate; and to impose sanctions upon plaintiff's counsel. This matter was tried to a jury and resulted in a finding of liability against defendants for actual and punitive damages in the amount $756,795.33. The facts of the underlying lawsuit are set forth in this court's published order denying defendants' motion for remittitur, 738 F.Supp. 1361, and will be discussed here only as they relate to the present motions.

■ As an initial matter, the court notes that defendants have raised a question as to the effect of a bankruptcy proceeding filed by defendants in the United States Bankruptcy Court for the Eastern District of Texas. The bankruptcy judge has lifted the automatic stay of 11 U.S.C. § 362(a), and defendants have appealed this order to the Bankruptcy Appellate Panel. Defendants "notify" the court that their appeal automatically stays further action in this matter.

Defendants reliance on 11 U.S.C. § 362(a) is misplaced. Its provisions speak only to the effect of the filing of a bankruptcy petition, not the filing of a notice of appeal from an order lifting the automatic stay. Bankruptcy Rule 8005 governs the normal procedure for obtaining a stay of orders of a bankruptcy court. Under this rule, a motion for stay "pending appeal must ordinarily be made in the first instance in the bankruptcy court." Thus, the court concludes that the filing of a notice of appeal from the bankruptcy court's order lifting the automatic stay does not of itself operate to reimpose the automatic stay.

### I. Garnishment

This court has authority to conduct enforcement proceedings in this action under Fed.R.Civ.P. 69(a), which directs that state rules govern the procedure on execution. The rules for Kansas garnishment proceedings are found at K.S.A. § 60–714 to –726 (1983 & Supp.1989). Pursuant to K.S.A. § 60–716, plaintiff has caused the clerk of the court to issue an order of garnishment upon State Farm. State Farm filed a timely answer in accordance with K.S.A. § 60–718(a), and has prayed that plaintiff's garnishment action be dismissed. Plaintiff has made a reply, contesting State Farm's answer, and setting forth claims against State Farm. K.S.A. § 60–718(c). Plaintiff brings this garnishment action against defendants' insurer in an attempt to satisfy a judgment that exceeds defendants' policy limits. Although coverage under defendants' automobile liability policy is $200,000, plaintiff was awarded actual and punitive damages totaling $756,795.33. Plaintiff alleges that State Farm was negligent, acted in bad faith, and breached its fiduciary duty to defendants by failing to represent defendants' best interest in this case. As a result of this alleged negligence and bad faith, plaintiff claims that State Farm is liable to plaintiff for the full amount of judgment, notwithstanding the limit of defendants' policy.

■ It is well established under Kansas law that "an insurer is liable for the

full amount of its insured's resulting loss, even if that amount exceed[s] the limits of the policy, for the negligence or bad faith in defending or settling an action against the insured." *Smith v. Blackwell*, 14 Kan. App.2d 158, 162, 791 P.2d 1343 (1989) (citing cases); *see also Insurance Co. of N. Am. v. Medical Protective Co.*, 768 F.2d 315, 321 (10th Cir.1985) (discussing factors relevant to Kansas action for bad faith in settling). A garnishment action is the proper procedure for determining the garnishee-insurer's indebtedness under this rule, and the plaintiff-creditor, who stands in the shoes of the defendant-debtor, may take and enforce that which the defendant-debtor could enforce against his insurer. *Gilley v. Farmer*, 207 Kan. 536, 544, 485 P.2d 1284 (1971); K.S.A. § 60-718(c). If a reply is filed to the garnishee's answer, "the court shall try the issues joined, the burden being upon the party filing the reply to disprove the sworn statements of the answer, . . . ." K.S.A. § 60-718(c). In such garnishment proceedings the court may rule on motions to dismiss and, where appropriate, may enter summary judgment in favor of the moving party. *Gilley*, 207 Kan. at 540, 485 P.2d 1284.

State Farm does not refute these authorities, but attempts to stay any further garnishment proceedings in this action pending appeal. As set forth in this court's previous order, defendant has not posted a supersedeas bond to stay the appeal of the underlying action. 738 F.Supp. at 1365. State Farm now moves to stay garnishment proceedings pending appeal by posting the $200,000 amount of its coverage under defendants' policy. Although this district normally requires a supersedeas bond of 125% of the judgment, D.Kan. Rule 221, State Farm relies on Kansas Supreme Court authority holding that a bond in the amount of the insurer's coverage of a defendant's liability should suffice to stay enforcement of the judgment. *Cansler v. Harrington*, 231 Kan. 66, 643 P.2d 110 (1982) In *Cansler* the court held that an insurer seeking to stay garnishment proceedings against it need only post a supersedeas bond in the amount of its policy, even if the judgment against its insured

exceeds the policy limits. *Id.* at 73, 643 P.2d at 115.

Plaintiff opposes garnishee's attempt to stay garnishment by posting only the amount of its policy coverage. Although Fed.R.Civ.P. 69(a) requires this court to apply state rules for the "procedure on execution," it is unclear whether this rule also encompasses the procedure to stay rather than enforce a judgment. If Rule 69(a) is not read to apply to the procedure to stay execution of judgment, then D.Kan. Rule 221 should control:

> A supersedeas bond staying execution of a money judgment shall, *unless the court otherwise directs*, be in the amount of the judgment, plus 25% of that amount to cover interest and any award of damages for delay.

(emphasis added). The court does not dwell on this distinction, however, because it believes that the rule of *Cansler* is supported by sound policy considerations. If State Farm were required to post a full supersedeas bond prior to any finding of liability for an amount in excess of the policy, State Farm would place at risk an amount that it has no obligation to pay at this point. Thus, even assuming that *Cansler* is not controlling on this court, its rule will be adopted under the discretionary authority of D.Kan. Rule 221. At this time, State Farm may stay the garnishment action against it for the amount of its policy coverage by posting $200,000 plus 25% to cover costs and interest.

The court's adoption of the rule of *Cansler* does not end the present inquiry. In *Cansler* the insurer sought "only to stay the garnishment action against it to the extent of its liability under its policy . . . ." 231 Kan. at 73, 643 P.2d at 115. By contrast, State Farm moves to stay *all* garnishment proceedings in this case, including the action to determine its potential excess liability for alleged bad faith in defending. The court believes that this distinction is fatal to State Farm's attempt to stay all garnishment action against it. Although Kansas considers the proceeding for determining the garnishee-insurer's indebtedness to be a garnishment action, *Gil-*

*ley*, 207 Kan. at 544, 485 P.2d 1284, an excess liability garnishment action is of a very different nature than that presented to the *Cansler* court. *Cansler* was concerned only with the inequity of forcing an insurer either to post bond for the full amount of judgment or to allow a successful plaintiff to garnish immediately the undisputed amount of the insured's policy. The limitation of the *Cansler* decision is also reflected in the language of its holding that "the garnishee may stay a garnishment action against it by posting a supersedeas bond *in the amount of its liability* plus costs and interest." 231 Kan. at 73, 643 P.2d at 115 (emphasis added). In the present case, the amount of State Farm's liability in excess of its policy limits is disputed and can only be determined by a trial to the court. K.S.A. § 60–718(c). The *Cansler* court did not address whether the posting of a supersedeas bond in the amount of the policy is sufficient to stay a garnishment action involving issues wholly unrelated to the undisputed amount covered under the policy. For these reasons, the court believes that State Farm may rely on the rule of *Cansler* only to the extent that it seeks to stay garnishment proceedings involving the $200,000 policy limit.

█ State Farm argues an additional basis independent of *Cansler* for staying all garnishment action against it. State Farm alleges that the garnishment action against it is not ripe for adjudication because of the possibility of reversal of the case by the court of appeals. If defendants are successful on their appeal and the judgment is vacated, State Farm would no longer have excess liability for any alleged bad faith in defending the Dilworth's interests.

Under the ripeness doctrine, "[t]he central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532, at 112 (1984), *quoted in Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3332–33, 87 L.Ed.2d 409 (1985). The basic test for ripeness requires the court "to evaluate both the fitness of the issues for judicial decision and the hardship to the

parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *see also Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir.1990).

The court is persuaded that the controversy between State Farm and plaintiff is ripe for adjudication. The jurisdictional doctrine of ripeness is often invoked where the absence of final action by an administrative agency renders the asserted injury too speculative for purposes of a judicial review. *See, e.g., Sierra Club*, 911 F.2d at 1418 (Forest Service refusal to assert implied water rights not "final agency action" given its possible acceptance of these water rights in appropriate case). By contrast, this court's previous ruling on defendants' post-judgment motion resulted in a final judgment for purposes of the appeal. "It is fundamental that the mere pendency of an appeal does not, in itself, disturb the finality of a judgment." *Wedbush, Noble, Cooke, Inc. v. S.E.C.*, 714 F.2d 923, 924 (9th Cir.1983) (citing *Hovey v. McDonald*, 109 U.S. 150, 161, 3 S.Ct. 136, 143, 27 L.Ed. 888 (1883)); *see also Cansler*, 231 Kan. at 73, 643 P.2d at 115 (under Kansas law a judgment becomes "effective" before appeal, and plaintiff may proceed with garnishment absent appropriate supersedeas bond). Moreover, garnishment proceedings after a final judgment are available "[a]s an aid to the enforcement of the judgment. . . ." K.S.A. § 60–716. Kansas statutory and case law is unequivocal that a court may enforce its judgments through garnishment proceedings before the disposition on appeal unless a suitable supersedeas bond is posted. Because the determination of the insurer's alleged excess liability is considered to be an issue appropriately addressed through a garnishment action, this issue is now fit for judicial decision.

The court also finds that the mere possibility of a future vacated judgment is insufficient to vitiate plaintiff's present right to execute judgment on claims that have already been adjudicated. State Farm contends that valuable judicial resources will be wasted if the court proceeds to determine a liability that at some point may no longer exist. It is also "possible," however, that defendants might be unsuccess-

ful on appeal, requiring institution of the delayed garnishment proceeding to determine the existence of any excess liability on the part of State Farm. Plaintiff's successful prosecution of the subsequent garnishment action would then raise the specter of a second appeal by State Farm challenging a finding of bad faith in defending the interests of the Dilworths. To accept the argument advanced by State Farm might easily delay plaintiff's enforcement of judgment through two successive appeals, requiring the very type of inefficient piecemeal review that the ripeness doctrine seeks to avoid. *See F.T.C. v. Standard Oil Co. of California,* 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980) (citing *McGee v. United States,* 402 U.S. 479, 484, 91 S.Ct. 1565, 1569, 29 L.Ed.2d 47 (1971); *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969)). A stay would also pose the attendant risks of lost witnesses and failed memories that are always associated with delayed proceedings. In short, State Farm's argument asks the court to subject plaintiff to the lengthy "procedural circus" that was of such concern to the *Cansler* court. 231 Kan. at 71, 643 P.2d at 114. The hypothetical interests of judicial efficiency, based upon State Farm's speculations as to future events, do not warrant the hardship to plaintiff that would result from delaying the determination of State Farm's liability on a judgment that is now final. Plaintiff may proceed to determine the issue of garnishee's excess liability for bad faith or negligence in representing defendants' interests. Pursuant to K.S.A. § 60–720(c), defendants may also participate in these proceedings for the purpose of defending against garnishment or otherwise protecting their interests.

Plaintiff has also filed a motion for an order directing garnishee to pay into the court $200,000, which reflects the limit under defendants' policy, for immediate distribution to plaintiff. In its May 25 order,

this court denied defendants' motion to deposit these funds with the court, because defendants had made no motion to stay execution of judgment. Plaintiff now claims that deposit of this amount with the court is appropriate under K.S.A. § 60–721(a) because garnishee has admitted liability in the amount of the $200,000. As already discussed, State Farm may stay execution on the amount of its policy by posting a supersedeas bond for this amount plus 25%. If State Farm has not posted bond in the amount of $250,000 within 15 days of this order, State Farm shall make available to plaintiff's counsel $200,000 plus interest from the date of judgment.

## II. *Sanctions*

Counsel for defendants, Darrell Warta, moves for an order to set aside sanctions imposed upon him by the magistrate for alleged violations of Fed.R.Civ.P. 11. Approximately seven months before trial, and after discovery was thought to be complete, plaintiff was able to reopen discovery and find an accident report that had been prepared at the request of State Farm by Dr. Gary Thompson, a collision reconstruction expert. The report had been requested by State Farm eight days after the accident and submitted directly to Mr. Warta some four months after the accident. The report was addressed to Mr. Warta and makes no mention of State Farm or the purposes for which the report was made. Dr. Thompson's report was unfavorable to defendants insofar as it concluded that the point of impact between the Bergeson and Dilworth vehicles occurred eight feet across the center line in the north bound Bergeson lane. *See generally* 738 F.Supp. 1361. After discovery of this report, plaintiff moved for Rule 11 sanctions against Mr. Warta, his law firm, and State Farm, for signing an answer that denied all liability and for the failure to disclose the existence of Dr. Thompson's report in response to plaintiff's interrogatories.[1] The magis-

---

1. The first interrogatory requests:

 Any and all insurance investigation reports describing the collision and its cause prepared by any insurance adjuster or accident investigator representing defendants or their insurers.

Counsel responded by stating: "The answers to these interrogatories are being furnished by defendants counsel." The second interrogatory reads:

 2. State the name and present address of the insurance adjusters or investigators who investigated this case on behalf of defendants

trate held a hearing on plaintiff's motion and in a published order found that Rule 11 sanctions should be imposed against Mr. Warta. 132 F.R.D. 277.

A. Jurisdiction

 Mr. Warta challenges the magistrate's jurisdiction to impose Rule 11 sanctions, relying on *Silberstein v. Silberstein*, 859 F.2d 40 (7th Cir.1988). In *Silberstein* the court held that a magistrate has no power to enter a final order concerning Rule 11 sanctions absent the express written consent of the parties. *Id.* at 41–42. The court based its holding upon 28 U.S.C. § 636(c), which allows magistrates, upon the written consent of all parties, to "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case,...." *Id.* at § 636(c)(1). The parties had not expressed written consent to the magistrate's jurisdiction, and the court held that consent to § 636(c)(1) jurisdiction may not be inferred from the parties conduct. 859 F.2d at 42. *Accord Clark v. Poulton*, 914 F.2d 1426, 1431 (10th Cir.1990). Thus, the court found that the magistrate lacked jurisdiction over the Rule 11 matter.

The *Silberstein* court assumed applicability of § 636(c), and the nature of the Rule 11 sanction sought is not apparent from the opinion. This observation is pertinent, because a magistrate may exercise authority not only under subsection (c), but also under subsection (b) of the statute, which allows the designation of magistrates "to hear and determine any pretrial matter pending before the court" except certain enumerated motions generally referred to as "dispositive" motions. § 636(b)(1)(A); Fed.R.Civ.P. 72; *see also Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461 (10th Cir.1988). Because the holding of *Silberstein* is instructive only if the magistrate has exercised authority under subsection (c) of the statute, the court must determine the statutory source of the magistrate's jurisdiction in this case.

Pursuant to 28 U.S.C. § 636(b)(1), and in accordance with Local Rule, this case was initially assigned by the clerk to the magistrate "for the hearing and determination of *all* pretrial, procedural and discovery motions." D.Kan. Rule 602. (emphasis added). During these pretrial proceedings, plaintiff became aware of an expert's accident report that had not previously been disclosed by defendants' counsel in response to plaintiff's request for production and interrogatories. As a result of this discovery, plaintiff sought sanctions for counsel's failure to disclose this report in his discovery response and for his denial of liability in the answer. It is thus apparent that the pretrial motion for sanctions related to the conduct of counsel for the signing of pretrial filings. For this reason, the court concludes that this was a matter within the magistrate's general authority to "hear and determine" pretrial matters, and that the magistrate had jurisdiction under § 636(b)(1) and Fed.R.Civ.P. 72 to entertain plaintiff's motion for sanctions.

If the motion for sanctions concerns a matter that can be characterized as nondispositive, the magistrate has authority to "enter into the record a written order setting forth the disposition of the matter," and the district court reviews the magistrate's disposition only under the "clearly erroneous or contrary to law" standard. Fed.R.Civ.P. 72(a). By contrast, a magistrate who presides over a Rule 11 matter that is "dispositive of a claim or defense of a party" may only make recommendations for the disposition of the matter, subject to full de novo review by the district court. Fed.R.Civ.P. 72(b). In *Maisonville v. F2 America, Inc.*, 902 F.2d 746 (9th Cir.1990), the court considered whether a magistrate had jurisdiction under § 636(b)(1) and Fed. R.Civ.P. 72 to impose Rule 11 sanctions for a frivolous motion relating to discovery. The motion was made after the parties had settled. The court found that the Rule 11 sanctions imposed by the magistrate were not dispositive of a claim or defense of a party and accordingly upheld the magis-

and/or State Farm Mutual Insurance Company.
 a. Set forth the dates upon which any investigations were conducted.

The response does not include Dr. Thompson's name or the dates of the investigations of the two persons listed.

trate's jurisdiction under § 636(b)(1)(A). *Maisonville*, 902 F.2d at 747–48.

The facts of *Maisonville* closely parallel those of this case, and the court finds its authority persuasive. As with *Maisonville*, the magistrate in this case entertained the motion for sanctions pursuant to the automatic referral for the hearing and determination of pretrial matters. When this court referred all pretrial matters to the magistrate, it also authorized the magistrate to dispose of all motions not dispositive of a party's claim or defense. *See id.* at 748. Moreover, the magistrate's order,

which was issued after the trial on the merits, can no more be considered as dispositive than could the sanctions that were imposed after the parties in *Maisonville* had settled.[2] *Id.* at 747. The magistrate properly exercised jurisdiction under § 636(b)(1)(A) and Fed.R.Civ.P. 72(a).[3]

■ Mr. Warta also raises an alternative jurisdictional challenge. Because the court has entered final judgment and has ruled on all post-trial motions relating to that judgment, counsel argues that both the magistrate and this court are deprived of

---

2. Counsel argues that a motion for Rule 11 sanctions involves a dispositive matter for which magistrates have no jurisdiction under either the statute or this District's local rules. This argument is flawed for two reasons.

First, a Rule 11 sanction is "dispositive" within the meaning of the federal rules only if dispositive "of a claim or defense of a party." Fed.R.Civ.P. 72(a), (b). Although a sanction takes the form of a dispositive motion if it involves the drastic measure of striking pleadings, *see Ocelot*, 847 F.2d at 1462, the court is unable to find anything dispositive in the imposition of sanctions that do not affect, much less resolve, the merits of the underlying action. *See Cooter & Gell v. Hartmarx Corp.,* ― U.S. ―, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990) (imposition of Rule 11 sanction is not a judgment on the merits but rather a collateral issue); *Ocelot*, 847 F.2d at 1462 (magistrates have general authority to order discovery sanctions). There is nothing to suggest an interpretation of Fed.R.Civ.P. 72 other than that apparent on its face: magistrates have jurisdiction to resolve pretrial matters that are not dispositive of a claim or defense of the *parties*, including sanctions involving collateral issues that in no way bear upon the disposition of the parties' underlying lawsuit. *Cf. Lancellotti v. Fay,* 909 F.2d 15, 17 n. 2 (1st Cir.1990) (declining to address "vexing question" of whether Rule 11 sanctions ordered by magistrate should be characterized as "dispositive" or "non-dispositive").

The second flaw with counsel's argument is that it assumes D.Kan. Rule 601(d) limits the types of dispositive motions for which magistrates in this District may make recommendations. This local rule simply mirrors the eight "dispositive" motions set forth in § 636(b)(1)(A), and the Tenth Circuit has recognized that the district court may refer to the magistrate dispositive matters other than those specified in subsection (A) of the statute. *Ocelot*, 847 F.2d at 1463. Thus, even assuming that a Rule 11 sanction could be characterized as dispositive, this would not deprive the magistrate of authority in this District to at least make recommendations subject to de novo review under the authority of § 636(b)(1)(B).

3. It might be argued that the magistrate's jurisdiction to hear and determine a "pretrial matter" allows for determination of Rule 11 sanctions only before the trial on the merits. This is one possible explanation for the result of *Silberstein*, where the motion for sanctions and the magistrate's disposition of the motion occurred after the parties had already settled. This fact does not distinguish *Silberstein* from *Maisonville*, however, and the results reached by the two courts appear to be irreconcilable. To the extent that *Silberstein* construes a magistrate's jurisdiction to extend only to matters arising exclusively during the pretrial phase of a case, the court rejects this interpretation of either § 636(b) or Fed.R.Civ.P. 72. Courts considering the meaning of the term "pretrial" as used in the statute have not defined this with respect to the time of trial, but rather have interpreted this to refer to "a matter unconnected to the issues litigated at trial...." *United States v. Flaherty*, 668 F.2d 566, 586 (1st Cir.1981); *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1018 (5th Cir. Unit A June 1981) (magistrate's award of discovery expenses after judgment is still a pretrial matter); *see also Colorado Bldg. & Constr. Trades Council v. B.B. Andersen Constr. Co.*, 879 F.2d 809, 811 (10th Cir.1989) (although § 636 does not expressly authorize magistrate's jurisdiction over post-judgment matters, "additional duties" clause of § 636(b)(3) may); 12 C. Wright, A. Miller & F. Elliott, *Federal Practice and Procedure* § 3076.4 (Supp.1990).

Even if the court were to reject this broad construction, it would reach the same conclusion under the facts of this case. Plaintiff's motion for sanctions was filed and heard orally by the magistrate before trial and was related only to counsel's conduct before and during discovery. The *only* posttrial event connected with the Rule 11 determination was the time at which the magistrate issued his order. Thus, even assigning a narrow temporal meaning to the term "pretrial," the court concludes that the timing of the magistrate's order had no significance with respect to his jurisdiction under § 636(b)(1) and Fed.R.Civ.P. 72.

all jurisdiction over any aspect of the case, including Rule 11 sanctions.

This argument is meritless. The timely filing of a notice of appeal from a final judgment does not divest the district court of jurisdiction over collateral matters not involved in that appeal. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Garcia v. Burlington Northern R.R. Co.*, 818 F.2d 713, 721 (10th Cir.1987). A Rule 11 determination is a collateral issue and not a judgment on the merits of an action. *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990). Thus, both the magistrate and this court retain jurisdiction over this matter.

## B. Standard of Review

Because the magistrate's jurisdiction over this nondispositive matter arose under 28 U.S.C. § 636(b)(1)(A), the court reviews his order under the clearly erroneous standard. The court must affirm the decision of the magistrate "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). This standard of review is the functional equivalent of the standard applied by an appellate court when reviewing for an abuse of discretion a district court's Rule 11 determination. *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990). The underlying facts of this matter are set forth fully in the magistrate's reported order, 132 F.R.D. 277, and the court will repeat them here only as they relate to the present discussion. The magistrate found two instances of a Rule 11 violation by counsel.

## C. Defendants' Response to Interrogatories

■ First, the magistrate concluded that counsel violated the rule by failing to disclose Dr. Thompson's report in response to plaintiff's interrogatories. *See supra* note 1 and accompanying text. In reaching his conclusion, the magistrate referred to Fed. R.Civ.P. 26(b)(4), which governs counsel's various obligations to disclose facts known and opinions held by experts that were "acquired or developed in anticipation of litigation for trial, . . . ." The magistrate relied on the categorization scheme set forth in *Ager v. Jane C. Stormont Hosp. & Training School for Nurses*, 622 F.2d 496 (10th Cir.1980), distinguishing between four different types of experts:

(1) Experts a party expects to use at trial. The opponent may learn by interrogatories the names of these trial witnesses and the substance of their testimony but further discovery concerning them can be had only on motion and court order.

(2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial. Except as provided in rule 35 for an examining physician, the facts and opinions of experts in this category can be discovered only on a showing of exceptional circumstances.

(3) Experts informally consulted in preparation for trial but not retained. No discovery may be had of the names or views of experts in this category.

(4) Experts whose information was not acquired in preparation for trial. This class, which includes both regular employees of a party not specially employed on the case and also experts who were actors or viewers of the occurrences that gave rise to suit, is not included within Rule 26(b)(4) at all and facts and opinions they have are freely discoverable as with any ordinary witness.

*Ager*, 622 F.2d at 500–01. (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 2029, at 250–51 (1970)). The magistrate concluded that Dr. Thompson was a "category 1" expert, and that counsel had violated the rule by failing to disclose this expert's identity and reports.

The magistrate's classification of Dr. Thompson as a category 1 expert is clearly erroneous.[4] There is no indication that

---

**4.** As an "additional factor" bearing on the prop- er classification of Dr. Thompson, *Ager,* 622

counsel contemplated trial use of this expert, who was never listed as a potential witness and whose conclusions were manifestly adverse to defendants' version of the events of the accident.[5]

The court notes that the magistrate excluded the possibility of classifying Dr. Thompson as a category 4 expert—not consulted in anticipation of trial. Slip op. at 7. The magistrate made this conclusion based on his observation that Dr. Thompson was neither a regular employee of a party nor an actor or viewer of the occurrences that gave rise to the suit. Slip op. at 7. The court believes that the magistrate misapprehended the relevant inquiry under category 4 by interpreting the inclusive language of *Ager* to be exclusive on the issue of whether an expert is retained in preparation for trial. If an expert was not consulted in anticipation of litigation, but rather during the regular course of business, this expert's facts and conclusions are freely discoverable. *In re Sinking of Barge "Ranger I"*, 92 F.R.D. 486, 489 (S.D.Tex. 1981); *In re Brown Co. Sec. Litig.*, 54 F.R.D. 384, 385 (E.D.La.1972). Whether an insurance company's investigating documents were prepared in the regular course of business or prepared in anticipation of litigation depends upon the facts of each case. *Lett v. State Farm Fire & Casualty Co.*, 115 F.R.D. 501, 503 (N.D.Ga. 1987); *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D.Ga.1982). This is relevant to this case because of a "mistake"

that Mr. Warta revealed during the hearing before the magistrate. Mr. Warta stated:

[A]t the time I answered these Interrogatories and this Request for Production of Documents, I took the expert reports that Dr. Thompson had done to be expert reports for me prepared in anticipation of litigation and if I deemed him not to be a witness in this case as an expert, that I didn't have to identify him.

When I found out later on and realized it was State Farm who had hired him, afterwards, then I corrected that. So, what I'm saying, when I made the 'mistake' that I made, I was not making that mistake for any improper purpose.

Magistrate's order of August 23, 1990, slip op. at 25–26. From this admission it appears that Dr. Thompson had always been a category 4 expert, whose information had not been acquired or developed in anticipation of litigation, and that counsel's failure to disclose Dr. Thompson's reports was based on an oversight.

In any event, the court does not believe that the proper classification of Dr. Thompson at this late hour is germane to the task of determining whether sanctionable behavior occurred. If sanctions are appropriate, it should not depend upon counsel having guessed correctly as to proper classification of Dr. Thompson. Mr. Warta asserted before the magistrate that he based his decision not to disclose in reliance upon *Ager*, and presumably also upon his apparently mistaken classification of Dr. Thomp-

---

F.2d at 501, the magistrate considered it significant that State Farm insured not only defendants but also plaintiff. The court is unable to discern how this fact relates to the only relevant inquiry in determining whether an expert falls within category 1 or 2 as set forth in *Ager:* does the party resisting discovery expect to call the expert at trial. If so, the moving party is entitled to discovery. If not, the movant may discover the identity, facts, and opinions of the expert only upon a showing of such exceptional circumstances as would make impracticable the discovery of "facts or opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(B). Whatever breach State Farm may have committed with respect to its fiduciary duty to plaintiff, this does not impose a duty upon defendants' counsel to share with plaintiff the reports of an expert who has been consulted in anticipation of litigation.

5. The magistrate's classification of Dr. Thompson under category 1 was apparently based upon a misinterpretation of the time to which Fed.R.Civ.P. 26(b)(4)(A)(i) speaks. Upon service of an interrogatory, a party must identify persons whom that party "expects to call as an expert witness at trial...." *Id.* Under this rule a party must disclose the identity only of experts whom he expects, *at the time the interrogatory is answered or thereafter,* to call as an expert. *See* Fed.R.Civ.P. 26(e)(1)(B). The singular concern of the drafters of the rule was for effective cross-examination at trial of an opponent's expert witnesses. *See id.* advisory committee note, 1970 amendment. This rule has no application to experts who, although perhaps once expected to be called, in fact will not be used at trial.

son as a category 2 expert under the decision. As *Ager* indicates, however, counsel is neither required nor authorized to determine unilaterally the correct status of an expert thought to be undiscoverable:

> The determination of the status of the expert rests, in the first instance, with the party resisting discovery. Should the expert be considered informally consulted, that categorization should be provided in the response. The propounding party should then be provided the opportunity of requesting a determination of the expert's status based on an *in camera* review by the court.

*Ager,* 622 F.2d at 502. Although this language only refers to the obligation to respond when counsel believes that an expert was informally consulted, the court does not read it to be restricted to such category 3 experts. Because of the often fact-dependant nature of the question of whether an expert was consulted in anticipation of litigation or rather in the regular course of business, counsel is not at liberty to make this determination without allowing review by the court. If counsel believes that the identity and/or opinions of an expert are nondiscoverable under either category 2 or 3, then counsel should state this categorization in the response. The ultimate determination of the expert's status may then be made by *in camera* review upon request of the proponent of discovery. *See also* Fed. R.Civ.P. 26(g) advisory committee note, 1970 amendment (counsel not required to disclose privileged communications or work product in order to show that discovery response is justified, and *in camera* review remains available). Indeed, if the procedure outlined in *Ager* had been followed in this case, counsel's oversight would likely have been exposed much sooner.

In addition, by failing to disclose even the existence of a possible category 2 expert, counsel unwittingly deprived the magistrate of the opportunity to determine whether exceptional circumstances were present that would make impracticable plaintiff's ability to obtain relevant facts or opinions on the same subject as Dr. Thompson's reports. Rule 26(b)(4)(B), upon which counsel's classification is based, itself states:

> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, *... upon showing of exceptional circumstances* under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(emphasis added). A review of this language gives one pause to consider how a party might make a showing of exceptional circumstances unless he were aware of the existence of an expert within this category.

Thus, if sanctionable behavior occurred, it is to be found in two omissions by Mr. Warta: first, by failing to discover that Dr. Thompson had not been retained in anticipation of litigation, and second, by failing to disclose the existence of a possible category 2 expert whom counsel erroneously believed to have been retained in anticipation of litigation. Because the magistrate did not address these issues, the court proceeds to examine them.

Rule 26(g) provides:

> The signature of the attorney or party constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

The advisory committee notes to this subsection make clear that "[t]he term 'response' includes answers to interrogatories...." Also, the standard of conduct imposed under this subsection is similar to

the "objective reasonableness" standard of Rule 11.

The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances.

. . . .

The signing requirement means that every discovery request, response, or objection should be grounded on a theory that is reasonable under the precedents or a good faith belief as to what should be the law. This standard is heavily dependent on the circumstances of each case.

Fed.R.Civ.P. 26(g) advisory committee note, 1983 amendment (citations omitted). If, after a reasonable inquiry, Mr. Warta could not form a reasonable belief that he had no obligation to inform plaintiff of the existence of a possible category 2 expert, then the court is obligated to impose sanctions under Rule 26(g). *See Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988). As with Rule 11 sanctions, the court must avoid hindsight and resolve all doubts in favor of the signer. *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied sub nom., County of Suffolk v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

The court is troubled by counsel's failure to discover that Dr. Thompson had not been consulted in anticipation of litigation. Although counsel may very well have believed in subjective good-faith that Dr. Thompson had been retained for this purpose, the dates contained on the investigation reports cast doubt on the reasonableness of this belief. The first report by Dr. Thompson sent to Mr. Warta is prominently dated January 8, 1987; the second report is dated March 16, 1987. Plaintiff did not file suit until September 30, 1987. The court believes that consideration of these dates alone should have at least caused counsel to hesitate before concluding that Dr. Thompson was an expert consulted in anticipation of litigation. *See Medical Emergency Servs. Assocs., S.C. v. Foulke,* 844 F.2d 391, 400 (7th Cir.1988) (failure to discover relevant information on face of contract was not "reasonable inquiry" by attorney). Moreover, a careful response to the questions posed by plaintiff's second interrogatory should have directed counsel to consider the dates. The interrogatory states in full:

2. State the name and present address of the insurance adjusters or investigators who investigated this case on behalf of defendants and/or State Farm Mutual Insurance Company.

a. Set forth the dates upon which any investigations were conducted.

Counsel's response indicated two persons other than Dr. Thompson and did not include the dates of their investigations. The court also notes that plaintiff served this interrogatory on September 30, 1987, and that counsel did not respond until December 17, 1987. Thus, counsel had ample time to discover Dr. Thompson's status before answering the interrogatory.

Counsel's second omission is more easily understood. The court has concluded that a fair reading of *Ager* should require counsel to disclose in response to the appropriate interrogatory the existence of any expert whom counsel claims is not discoverable because retained in anticipation of litigation or preparation for trial. This procedure will allow the court, and not counsel, to resolve any factual issues relating to the discoverability of the expert. This conclusion was by no means obvious from the *Ager* decision, however. The court will not impute to counsel the wisdom of the monday morning quarterback and require counsel to predict legal duties based on courts' interpretations of uncertain areas of law.

Nonetheless, given counsel's failure to inquire into the circumstances under which Dr. Thompson made his report, the court is unable to say that counsel conducted himself reasonably. Although the court is re-

luctant to find sanctionable conduct in a case that by all appearances involves subjective good-faith belief on the part of counsel, it nonetheless is obligated under the mandatory terms of Rule 26(g) to find that sanctions are warranted.

The case will be remanded to the magistrate to determine appropriate sanctions for the failure of counsel to discover the purpose for which Dr. Thompson made his report. It is unknown to the court whether counsel's omission actually impeded the ability of plaintiff to conduct a full and meaningful discovery in this case. In determining the appropriate monetary sanction under Rule 11, "[t]he injured party has a duty to mitigate costs by not overstaffing, overresearching or *overdiscovering....*" *White v. General Motors Corp., Inc.*, 908 F.2d 675, 684 (10th Cir.1990) ("*White II*"). The same may be equally said of Rule 26(g) sanctions. Thus, the magistrate should consider the extent to which the reports of Dr. Thompson are duplicative of facts, conclusions, and opinions that were already in plaintiff's possession, or could have been obtained through other means without undue hardship to plaintiff. The magistrate may conduct any additional proceedings that he finds necessary to make this and other relevant factual inquiries as set forth in *White II*, 908 F.2d at 683–85.

### D. Defendants' Answer

■ The second instance of sanctionable behavior found by the magistrate related to defendants' answer to the complaint. The answer denied plaintiff's allegation that the accident was due to the negligence of defendants by causing or permitting their trailer to enter the northbound lane of Sheryl Bergeson. Also, the affirmative defense set forth in defendants' answer states: "This incident was contributed to by the fault of either the decedent or others for whom these defendants are not responsible, thus either barring or reducing plaintiff's claim herein." The magistrate believed Dr. Thompson's reports to represent "the true facts," slip op. at 24, and concluded that it was objectively unreasonable for counsel to have denied defendants' liability in light of these reports.

The magistrate deemed it to be of paramount significance that Dr. Thompson's construction of the accident was contrary to the averments made in defendants' answer. Although the court certainly agrees that the reports of Dr. Thompson might reasonably cause counsel to doubt his clients' version of the accident, this doubt does not require counsel, or authorize courts, to sit in judgment over the merits of the case. Only two eye-witnesses to the actual accident survived: the defendants. The reports of Dr. Thompson, however, were made based upon an evaluation of the circumstantial evidence left by the accident. In other words, the facts of this case presented an issue of credibility in which the trier of fact would be called upon to decide whether the defendants' account was believable given the circumstantial evidence contradicting it. "[I]t is the sole province of the jury to appraise credibility, draw inferences, determine the weight to be given testimony and to resolve conflicts in the facts." *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428, 1430 (10th Cir.1990). Thus, the court believes that the defendants' version of the facts, although suspect, would present even a triable issue. *See Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir.1990) (court must construe all well-pleaded allegations in favor of pleader and dismissal is proper only if allegations are unsupportable beyond a reasonable doubt). Moreover, even if a party does not raise a genuine issue of material fact sufficient to withstand a motion for summary judgment, Rule 11 sanctions are inappropriate if there is *some* evidence to support the losing party's position. *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 361 n. 2 (7th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987); *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 69 (3d Cir.), *cert. denied sub nom., Herman Bros., Inc. v. Teamsters Local Union No. 430*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988). Courts should "resist an interpretation of Rule 11 that would blur the roles of attorneys and finders of fact." *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir.1989). In the court's view, the magistrate confused

this distinction and required counsel to sit as the ultimate finder of fact over his clients. The answer was reasonable under the facts, and the magistrate's conclusion to the contrary was clearly erroneous.

Because the magistrate's order was based on erroneous legal conclusions, the court will set aside his order and remand for further proceedings.

### E. Plaintiff's Claim against State Farm

State Farm moves for Rule 11 sanctions against plaintiff for the filing of an allegedly frivolous claim in his amended reply to garnishee's verified answer. This post-trial reply relates to garnishment but is in the nature of a pleading. *See* K.S.A. § 60–718(c). In addition to plaintiff's claim against State Farm for liability in excess of the policy limit, plaintiff's first amended reply sets forth a separate claim for punitive damages against State Farm for its willful breach of fiduciary duty against defendants. Unlike the claim against State Farm for excess liability, which derives from defendants' own tortious acts, this claim is based directly upon the acts of State Farm in representing the interests of defendants. Apparently, plaintiff made this claim under the theory that plaintiff, as the creditor, stands in the shoes of the defendant-debtor to enforce any claims the Dilworths might have against State Farm. *Gilley v. Farmer*, 207 Kan. 536, 544, 485 P.2d 1284 (1971). Plaintiff has since dismissed this claim in his second amended reply, and therefore garnishee's motion to dismiss this claim will be denied as moot.

"Whether meritless elements of a complaint combine to render the pleading frivolous as a whole is a 'matter for the court to determine, and this determination involves matters of judgment and degree.'" *Burull v. First Nat'l Bank of Minneapolis*, 831 F.2d 788, 789 (8th Cir.1987) (quoting *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir.1987)); *Cf. Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1142 (9th Cir.1990) (en banc; significance of claim to pleading as whole is only one relevant factor in determining whether a pleading is sanctionable); *White v. General Motors, Inc.*, 908 F.2d 663, 675 (10th Cir.1990) ("*White I*": viewing appeal

as a whole, presense of frivolous arguments with nonfrivolous arguments did not justify sanctions). Viewing plaintiff's first amended reply in its entirety, the court does not find the pleading as a whole to be frivolous. Rule 11 sanctions are therefore inappropriate.

IT IS BY THE COURT THEREFORE ORDERED that garnishee's motion for order staying garnishment action (Dkt. 114) be granted in part and denied in part. Garnishee may stay garnishment against it only to the extent of its policy limit by posting a supersedeas bond in the amount of $250,000 within 15 days of the date of this order.

IT IS FURTHER ORDERED that plaintiff's motion to proceed with discovery in this garnishment action (Dkt. 161) be granted. Pursuant to 28 U.S.C. § 636(b) and D.Kan. Rule 601 the magistrate is hereby designated to conduct discovery of this matter.

IT IS FURTHER ORDERED that plaintiff's motion for order directing garnishee to deposit funds with the court (Dkt. 105) be denied. If garnishee has not posted a supersedeas bond in the amount of $250,000 within 15 days of this order, garnishee shall make available to plaintiff's counsel $200,000 plus interest from the date of judgment.

IT IS FURTHER ORDERED that garnishee's motion for partial dismissal (Dkt. 119) be denied as moot.

IT IS FURTHER ORDERED that Darrell L. Warta's motion for order setting aside magistrate's order (Dkt. 146) be granted. The magistrate's order of August 23, 1990 is vacated, and the matter is remanded to the magistrate for further proceedings in accordance with this order.

IT IS FURTHER ORDERED that garnishee's motion for Rule 11 sanctions (Dkt. 137) be denied.