No. 45,753

Jo Ann Janice Otta, Widow; and Larry Dean, Gary Lynn, Debra Jo Ann and Danny Ray Otta, Minor Dependents of Lional Dean Otta, Deceased, *Appellants,* v. Leslie Johnson, d/b/a Johnson Truck Lines, Appellee, and State Automobile and Casualty Underwriters, *Appellee.*

(461 P. 2d 758)

Opinion filed December 6, 1969.

*Kenneth Clark,* of Hill City, argued the cause, and *Hans R. Hansen,* of Hill City, was with him on the brief for the appellants.

*Gary Cooper,* of Colby, argued the cause, and *Keith Willoughby,* of Colby, was with him on the brief for the appellee Leslie Johnson.

*H. Lee Turner,* of Great Bend, argued the cause, and *J. Eugene Balloun, Max E. Eberhart,* and *Thomas C. Kelley,* all of Great Bend, were with him on the brief for the appellee insurance carrier.

The opinion of the court was delivered by

Harman, C.: This is a workmen's compensation case arising out of the death of Lionel D. Otta. Claimants, his widow and minor children, have appealed to this court from the trial court's order denying compensation.

During a rainstorm on June 9, 1965, Otta and one Walter R. Buehler were killed on the Kansas Turnpike near Wichita when the truck they were driving in a southwesterly direction struck a bridge abutment. The truck was owned by respondent Leslie L. Johnson of Colby, Kansas, and was en route between Scandia, Kansas, and

either Altus or Alva, Oklahoma. The accident occurred approximately two and one half miles northeast of the South Wichita turnpike interchange.

Following the death claimants filed their application for hearing and claim for workmen's compensation, alleging Otta was an employee of respondent Johnson and that the State Automobile and Casualty Underwriters, a corporation, was Johnson's insurance carrier for workmen's compensation.

From the inception of the litigation the respondent Johnson and his alleged insurance carrier have taken contrary positions on most issues. Generally, Johnson has agreed with claimants' contentions and the insurance company has opposed them. The latter has also denied it was in fact a carrier of workmen's compensation insurance on Johnson's behalf.

After the stipulations of the parties at the hearing before the workmen's compensation examiner, the issues remaining included the following. Whether or not the relationship of employer and workman existed at the time of decedent's accidental injury; whether decedent's death arose out of and in the course of his employment; whether the parties were governed by the Kansas workmen's compensation law, and whether State Automobile and Casualty Underwriters had workmen's compensation insurance coverage on Johnson's business.

After extended hearing the examiner made findings of fact favorable to claimants on the disputed issues and awarded them compensation accordingly. No review of the award by the workmen's compensation director was requested and it was automatically approved by the director. The award was then appealed by State Automobile to the district court of Sedgwick county. That court made extensive findings of fact adverse to claimants and denied compensation. Included in these findings was one that there was no contract of insurance coverage between Johnson and the insurance company on June 9, 1965. Claimants have now appealed to this court.

The only matter urged in the brief filed in this court by appellee Johnson is that the trial court erred in its finding on insurance coverage; however, he took no cross-appeal upon this ruling and it is not reviewable at his behest. Claimants do raise the issue in their appeal.

Appellants present a procedural point which should be dealt with first. They assert the district court of Sedgwick county was the

wrong forum for the appeal, arguing it should have gone to and been decided by the district court of Thomas county because Otta and Johnson resided in that county and the alleged contract of employment was made there. The point is not well taken. In *Russell v. Lamoreaux Homes, Inc.*, 198 Kan. 447, 424 P. 2d 561, the applicable statute, then K. S. A. 44-556, was construed and it was held an appeal from the director's decision is to the district court of the county in which the accident occurred. This accident occurred in Sedgwick county.

The trial court found Johnson was not operating a "motor transportation line" as contemplated by K. S. A. 44-505; that prior to June 9, 1965, he had not filed an election to come under the workmen's compensation act and had not qualified as a self-insurer; that certain named individuals (not including Otta or his companion Buehler) were not employees of Johnson on June 9, 1965; that on June 9, 1965, Johnson did not have five workmen employed by him in the trucking business, and that at the time of Otta's accidental injury and death he had substantially deviated from the normal route of travel for no reason connected with his employment. The trial court made numerous findings on the question of insurance coverage for workmen's compensation and concluded none existed on June 9, 1965. The court also concluded Otta's accidental injury and death did not arise out of and in the course of his employment, and that Otta and Johnson were not covered by the provisions of the workmen's compensation act.

Several propositions are embraced in the trial court's conclusion the parties were not under the compensation act and further evidence should be recited to clarify the matter at issue. The evidence in some respects was inconclusive, inconsistent or conflicting and some was subject to different interpretations. Upon appeal it must be considered in the light most favorable to the prevailing party in the trial court.

Johnson had been in the trucking business at Colby for several years. He held various kinds of licenses and permits which authorized him to haul certain kinds of commodities in particular areas of the state and the United States. At various times he owned certain trucks and trailers and he leased others under a profit-sharing agreement. Some of Johnson's drivers were truck owners who could not afford to purchase the necessary governmental permits. The lease agreement permitted them to operate under John-

son's permits and use his trailers when necessary but they remained independent contractors in the operation of the trucks and were so carried on Johnson's bookkeeping records prior to June 1, 1965. These drivers were permitted to solicit their own business. Johnson collected the gross revenue for hauling done by these drivers, deducted a percentage for himself and remitted the balance to the driver-owners. Johnson also collected the revenue for hauling done by his own trucks. Drivers of these trucks were paid a percentage of the gross earnings of the trucks. The percentage varied from twelve to twenty per cent depending on whether there were one or two men working on the truck. Johnson had no control over the drivers as to how, when or in what manner hauling jobs were done and was interested only in the result. Drivers paid their own expenses, taxes and insurance. Prior to June 1, 1965, all drivers were expressly carried on Johnson's books as independent contractors or subcontractors and not as employees. Johnson arranged this relationship pursuant to legal advice and all drivers were informed of and understood the arrangement. There were no deductions for or reporting of income tax, payroll tax or F. I. C. A. payments.

Prior to June 1, 1965, Johnson carried liability, collision and cargo coverage insurance with State Automobile, such insurance being written by a local independent agent at Colby. He also carried accident insurance on the drivers but had not carried workmen's compensation insurance and had not been under the workmen's compensation act. The drivers testified they paid their own accident insurance. Johnson's collision experience had not been good, several accidents having occurred. Because of this certain credits were forfeited on a renewal and his premium rate for collision insurance was going to be higher for the year commencing June 1, 1965, and he was so advised about May 15, 1965. Johnson commenced shopping around for cheaper insurance. He consulted an agency in Wichita but made no mention of workmen's compensation insurance. He consulted several times with State Automobile's local agent at Colby and mentioned workmen's compensation but made no contract. Finally, on the afternoon of June 1 he held his trucks up until he had told the agent he wanted "the whole works, workmen's compensation, collision and everything" and the agent had responded, "Consider yourself covered", and Johnson had thereafter released the trucks. After June 1 the local agent communicated several times with State Automobile respecting Johnson's

insurance, both by telephone and letter, but did not mention workmen's compensation coverage until after the June 9 accident. No premium had been calculated or paid and no election to come under the workmen's compensation act had ever been filed. A driver testified Johnson was going to deduct any premium for workmen's compensation from the money to be paid the driver.

After June 1, 1965, no change was made in any way in the method of operation of the trucks. Johnson's records were kept in the same way and no deductions were made for F. I. C. A. or tax withholding. The business continued to be operated on the same basis as before.

On June 1, 1965, Johnson owned two trucks and had leased one from a Leroy Bell. On the fatal trip Otta and his companion were driving one of the trucks owned by Johnson. At the same time Johnson was driving another and could have had a helper with him. Bell was on a trip to the far west and was being assisted by his brother, a school teacher. Bell was paying the wages for his relief driver or helper out of his percentage of the proceeds turned back by Johnson. The trial court made specific findings of fact neither Bell nor his brother was an employee of Johnson. There was testimony from which the trial court could find no others were employed by Johnson in the trucking business at this particular period although others were mentioned as having been associated on a part time basis at other periods of time. A woman who had been working part time as bookkeeper for him had left the state of Kansas prior to June 1.

The trial court specifically found Johnson did not have five workmen employed by him. Without further detailing its import, we are bound to say the record contains substantial evidence supporting that finding, and the finding is binding and conclusive on appeal. Conceding for the sake of the argument that Otta and Buehler might have been treated as employees, there were not three others shown to be such. Bell was shown to be an independent contractor who hired and paid his own employees when needed. The prime consideration in the so-called leasing agreements in the evidence appears to have been use by others of Johnson's licenses and permits, resulting in an independent contractor relation in fact and in law.

Treating Johnson's business as a motor transportation line as contemplated by K. S. A. 44-505, despite the trial court's ruling to

the contrary, an election to come under the compensation act not having been filed, it was incumbent upon the appellants under the then existing law (K. S. A. 44-507) to show that five workmen were employed at the time of the alleged accident (*Thorp v. Victory Cab Co.*, 172 Kan. 384, 240 P. 2d 128; *Bratcher v. Royse*, 185 Kan. 589, 345 P. 2d 648). Appellants' failure to sustain this burden alone precludes them from recovery of compensation and renders determination of the other matters urged upon appeal unnecessary.

The judgment of the trial court is affirmed.

APPROVED BY THE COURT.