**Fletcher D. and Ruth SAPP, Plaintiffs,**

v.

**Lee GREIF, Defendant,**

and

**National Union Fire Insurance Co. of Pittsburgh, Pa., Garnishee.**

No. 96–2003–JWL.

United States District Court, D. Kansas.

March 13, 1997.

Michael R. Lawless, Overland Park, KS, for Fletcher D. Sapp, Ruth Sapp.

Fletcher D. Sapp, Kansas City, KS, pro se.

Ruth Sapp, Kansas City, KS, pro se.

Ronald D. Lee, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for Leopold H. Greif.

Melanie D. Caro, Office of U.S. Atty., Kansas City, KS, for Tanya Treadway, Jose L. Jimenez.

Barry W. McCormick, J. Tyler Peters, Payne & Jones, Chtd., Overland Park, KS, for David Herndon.

Sharon A. Stallbaumer, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for David W. Frantze, Stinson Mag & Fizzell P.C.

Benjamin F. Mann, Terrance M. Summers, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Mary Jo Barry, D'Amato & Lynch, New York City, for National Union Fire Ins. Co. of Pittsburgh, PA.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

### *I. Introduction.*

This garnishment action comes before the court on the plaintiffs' motion for summary judgment (Doc. # 68), the Garnishee's motion for summary judgment (Doc. # 72), and the plaintiff's motion for sanctions and to strike the Garnishee's pleadings (Doc. # 86).[1] For the reasons discussed below, the court grants the Garnishee's motion and denies the plaintiffs' motions.[2]

### *II. Facts.*[3]

The following facts are uncontroverted. Sometime in late 1992 the Garnishee issued a Directors & Officers Insurance and Com-

---

1. Both the Garnishee and the plaintiffs filed motions (Doc.s # 99 & # 113) requesting oral arguments on their motions for summary judgment. D.Kan Rule 7.2 states that "Requests for oral arguments on motions shall be granted only at the discretion of the court." Because the court, in its discretion, concludes that oral argument would not be helpful, the court denies these motions.

2. The plaintiffs' motion to amend their reply (Doc. # 112) is granted.

3. Because the plaintiffs are proceeding *pro se,* the court will construe their pleadings liberally. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

pany Reimbursement Policy (Policy) to Midland Bank of Kansas (MBK) effective July 1, 1992, through July 1, 1993.[4] On November 12, 1993, the Garnishee filed suit against MBK, Mr. Lee Greif, a director and officer of MBK, and other insureds under the Policy seeking a declaratory judgment that the insureds' coverage was subject to certain exclusions based on certain fraudulent misrepresentations made on the insureds' policy application. On April 11, 1994, the plaintiff filed suit against MBK, Mr. Greif, Mr. Bruce Rhodes, and the FDIC as receiver of MBK in the district court of Johnson County, Kansas, alleging breach of loan agreements entered into by the plaintiffs and MBK and various other torts. In February of 1995, the Garnishee reached an agreement, in principal, to settle its declaratory judgment action. On April 12, 1995, the Garnishee entered into a settlement agreement (Agreement) with the FDIC as receiver of MBK and Midland Bank of Overland Park as well as the officers and directors of these two banks, including Mr. Greif. The Agreement provides,

> ... the Settling Defendants [officers and directors of MBK and Midland Bank of Overland Park], on behalf of themselves individually, and their respective heirs, executors, administrators, agents, representatives, successors and assigns, hereby release and discharge National Union, its parents, subsidiaries, affiliates and reinsurers, and their respective employees, officers, directors, agents, representatives, successors and assigns, from any and all claims, demands, obligations, damages, actions and causes of action, direct or indirect, in law or in equity, that arise from or relate to the Policy with regard to:

> 1. Any and all claims which are expressly released herein by the FDIC;

> 2. Any and all claims which are expressly reserved herein by the FDIC; and

> 3. Any and all claims by any person or entity against any of the Settling Defendants in their capacities as directors and/or

officers of the Banks, Concord Bancshares, Inc., TIC, Inc., and Midland Capital Corp. *Garnishee's Mot. for Summ. J.*, Exhibit R at 6–7. On October 23, 1995, the plaintiffs obtained a $620,650.59 judgment against Mr. Greif in his capacity as an officer and director of MBK. On December 8, 1995, the plaintiffs filed a garnishment in aid of execution action against the Garnishee, to recover on its judgment against Mr. Grief based on the Policy. On January 4, 1996, the Garnishee removed the plaintiff's garnishment action to this court.

### III. Summary judgment standard.

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

---

4. The Policy also covered various other financial institutions not relevant to this matter.

## IV. Discussion.[5]

### A. Mr. Greif's release.

■ Kansas law provides that a garnishment action is the proper procedure for determining a garnishee-insurer's liability. *See Bergeson v. Dilworth,* 749 F.Supp. 1555, 1558 (D.Kan.1990) (citations omitted), *aff'd,* 959 F.2d 245 (10th Cir.1992). However, the plaintiff-creditor, who stands in the shoes of the defendant-debtor, is only entitled to enforce that which the defendant-debtor could enforce against his or her insurer. *See Id.; see also Hunt v. Kling Motor Co.,* 841 F.Supp. 1098, 1101 (D.Kan.1993), *aff'd,* 65 F.3d 178 (10th Cir.1995) (citing *Williams v. Community Drive–In Theatre, Inc.,* 3 Kan. App.2d 352, 353, 595 P.2d 724, *rev. denied,* 226 Kan. 793 (1979)).

In this case, the Garnishee argues that the plaintiffs' claim is not covered by the Policy because pursuant to the Agreement, Mr. Greif, in whose shoes the plaintiffs stand, released the Garnishee from "[a]ny and all claims by any person or entity against any of the Settling Defendants in their capacities as directors and/or officers of the Banks...." *Garnishee's Mot. for Summ. J.,* Exhibit R at 7. The plaintiffs respond (1) that Mr. Greif's release is not binding on them because they were not parties to the Agreement, (2) that the Garnishee established the validity of the Policy by paying $875,000 to the FDIC for potential claims under the Policy, and (3) that the court cannot permit the Garnishee to conspire and collude with Mr. Greif to arbitrarily attempt to retroactively take away their substantial rights covered by the Policy.

■ Kansas law does not require an officer/director of a corporation to obtain or maintain director/officer insurance. *See* K.S.A. §§ 17–7601–7709. Nor does Kansas law prevent an officer/director of a corporation from releasing his or her director/officer insurer from liability. *See Bennett v. Colonial Life and Accident Ins. Co.,* 7 Kan. App.2d 441, 443, 643 P.2d 1133 (1982). In this case, Mr. Greif agreed to waive any of

his potential rights under the Policy against the Garnishee in exchange for a similar promise from the Garnishee. Because Mr. Greif did not owe the plaintiffs a duty to maintain his director/officer insurance, the plaintiffs cannot challenge Mr. Greif's decision to release the Garnishee and leave himself uninsured.

■ The plaintiffs also argue that Section I of the Agreement clearly reserves Mr. Greif's right, as a Settling Defendant, to claim coverage under the Policy for claims brought by anyone other than the FDIC. Section I of the Agreement provides,

> Notwithstanding any other provisions of this Agreement, National Union and the Settling Defendants expressly reserve their right to assert all claims, defenses and setoffs, including claims for rescission and to seek a declaratory judgment that no coverage exists under the Policy based upon any applicable exclusion against any of the Settling Defendants, *if either National Union or the Settling Defendants bring a claim or any future action for coverage under the Policy in violation of this Agreement.*

*Garnishee's Mot. for Summ. J.,* Exhibit R at 10 (emphasis added). The plain language of Section I clearly indicates that the Garnishee and the Settling Defendants, which includes Mr. Grief, were reserving the right to assert claims, defenses, and setoffs in the event that the Garnishee or the Settling Defendants breached the Agreement. Because neither the Garnishee nor the Settling Defendants have breached the Agreement, Mr. Greif and, therefore the plaintiffs, have no right to claim coverage under Section I.

■ Thus, because Mr. Greif legally waived his rights under the Policy, the plaintiffs, as Mr. Greif's creditors, have no rights under the Policy. *See Hunt,* 841 F.Supp. at 1101; *see also Bergeson,* 749 F.Supp. at 1558. As a result, because the plaintiffs do not have rights under the Policy, the Garnishee is

---

5. Because the Garnishee's summary judgment motion and the plaintiffs' summary judgment motion raise the same issues, the court will address them together. Moreover, because both parties rely on Kansas law in their papers and

because neither party has cited any facts which cause the court to believe that Kansas law does not apply, the court will apply Kansas law to the parties' summary judgment motions.

entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

### B. Notice.

Even if Mr. Greif had not released the Garnishee, the plaintiffs must still demonstrate that the Garnishee received timely notice of their claim as required under Section 8 of the Policy in order for their claim to be covered by the Policy. The plaintiffs contend that a letter from Mr. Monte Grissom, the president of MBK, to the Garnishee dated March 30, 1993 (Grissom Letter), and a letter from the FDIC to the Garnishee dated June 30, 1993 (FDIC Letter), satisfy the notice requirement as stated in Paragraph c of Section 8 which provides,

> If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a claim, with full particulars as to dates and persons involved, then any claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

*Garnishee's Mot. for Summ. J.*, Exhibit A at 4–5. The Garnishee responds that the Grissom Letter and the FDIC Letter did not satisfy § 8(c)'s notice requirement because neither make reference to any demand for payment by the plaintiffs as a result of the wrongdoing on which the plaintiffs' judgment is based.

 Under Kansas and general common law relating to the interpretation of insurance contracts, the court is bound by the clear and unambiguous language, construing the document as a whole. *See LaForge v. American Cas. Co. of Reading, Pa.*, 37 F.3d 580, 583 (10th Cir.1994) (citing *Phico Ins. Co. v. Providers Ins. Co.*, 888 F.2d 663, 667 (10th Cir.1989)). The test for determining the meaning of a contract provision is not what the insurer intended, but what the reasonable person in the position of the insured would understand it to mean. *See Id.* (citations and quotations omitted). Because § 8(c)'s express terms require the insured to inform the Garnishee "... of the circumstances and the reasons for anticipating ... a claim ...," the insured informing the insurer of potential claims, without providing any details concerning the potential claims' circumstances and reasons for anticipating them, is insufficient notice. *See Bendis v. Federal Ins. Co.*, 958 F.2d 960, 963 (10th Cir.1991)(citing *Winkler v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 930 F.2d 1364, 1367 (9th Cir.1991); *MGIC Indem. Corp. v. Home State Sav. Ass'n*, 797 F.2d 285, 288 (6th Cir.1986)).

The plaintiffs and the Garnishee agree that the Policy is a claims made policy.

> Under a claims made policy, coverage is only triggered when, during the policy period, an insured becomes aware of and notifies the insurer of either claims against the insured or occurrences that might give rise to such a claim. This differs significantly from an occurrence policy, in which coverage attaches automatically whenever a covered occurrence takes place within the effective dates of the policy.
>
> In a claims made policy, the notice is the event that invokes coverage under the policy. Clear notice of a claim or occurrence during the policy period is crucial, because allowing actual notice beyond the policy period would constitute an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Claims made policies are often a more economical way to provide coverage for risks like professional responsibility, because the notice requirements allow an insurer to close its books on a policy at the expiration date and thus attain a level of predictability unattainable under standard occurrence policies.
>
> Notice in a claims made policy provides the insurer with the knowledge that after a

certain date the insurer is no longer liable under the policy, and accordingly allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty. Such a policy reduces the potential exposure of the insurer, thus reducing the policy cost to the insured.

*Id.* (citations and quotations omitted). The *LaForge* court further stated that,

Because the notice of claim provision defines coverage under this policy, the only reasonable interpretation of the policy provision is that the insureds must regard the information they possess as a potential claim and formally notify their insurer through its claims liability department that a claim may be asserted.

*Id.* at 584 (quoting *American Cas. Co. of Reading, Pennsylvania v. Continisio,* 17 F.3d 62, 69 (3rd Cir.1994)); *See also F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1335 (5th Cir. 1994)("[T]he proper focus of the district court's inquiry is whether the insured has objectively complied with such a notice provision, and not whether the insurer has subjectively drawn inferences that potential claims exist from the materials submitted by the insured.").

▇ The Grissom Letter makes no reference to any demand for payment by the plaintiffs as a result of the wrongdoing on which the plaintiffs' judgment is based. The FDIC Letter mentions a 9.4 million dollar loan from MBK to Ronald and Janet Sapp, Mr. Fletcher Sapp's brother and sister-in-law, originated on February 7, 1991 and indicates that the debt of both Fletcher and Ronald Sapp was restructured on July 15, 1992, and that six million dollars was advanced by MBK and other affiliated institutions to pay off a prior lien on commercial office buildings the Sapps were apparently attempting to acquire. *Garnishee's Mot. for Summ. J.,* Exhibit J at 6.

The uncontroverted evidence indicates that the events mentioned in the FDIC Letter are separate and independent from the wrongdoing on which the plaintiffs' Johnson County lawsuit and judgment are based. Specifically, Mr. Fletcher Sapp stated during his trial in Johnson County District Court that his lawsuit against Mr. Greif was based upon conduct concerning two loans: one in the amount of 1.65 million dollars and one in the amount of two million dollars. *Garnishee's Mot. for Summ. J.,* Exhibit V at 6. The FDIC Letter only references a restructuring and a six million dollar advance. The plaintiffs have not produced any evidence linking the conduct mentioned in the FDIC Letter to the conduct on which their Johnson County lawsuit and judgment are based. Thus, because neither the Grissom Letter nor the FDIC Letter mention the conduct on which the plaintiffs based their lawsuit in Johnson County District Court as required by § 8(c) of the Policy, the court concludes that the Garnishee never received timely notice of the plaintiffs' claim and, therefore, the plaintiffs' claim is not covered by the Policy. As a result, because the plaintiffs' claim is not covered by the Policy, the Garnishee is entitled to summary judgment. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.[6]

**IT IS THEREFORE ORDERED BY THE COURT** that the parties' motions (Doc.s # 99 & # 113) requesting oral argu-

6. The plaintiffs filed a motion seeking to sanction the Garnishee and its counsel for submitting statements of fact which they allegedly knew to be false and for submitting claims, defenses, and other legal contentions purportedly unsupported by existing authority in violation of Fed.R.Civ. Pro 11, K.S.A. § 60–211, D.Kan. Rule 11.1, and 28 U.S.C. § 1927. Essentially, the plaintiffs appear to contend (1) that the Garnishee falsely represented when it had knowledge of Mr. Greif's problems, (2) that the Garnishee fraudulently obtained the Agreement, and (3) that the Garnishee fraudulently misrepresented the meaning of Paragraph I of the Agreement. The court is satisfied that the Garnishee's above mentioned contentions are objectively reasonable in that they are well grounded in fact and warranted by existing law and, therefore, denies the plaintiffs' motion for sanctions. *See Coffey v. Healthtrust, Inc.,* 955 F.2d 1388, 1393–94 (10th Cir.1992)(Fed.R.Civ.Pro 11); *Lemons v. Lewis,* No. 95–2507, 1996 WL 687034 at *1 (D.Kan., Nov 25, 1996)(D.Kan. Rule 11.1); *Braley v. Campbell,* 832 F.2d 1504, 1511–12 (10th Cir. 1987) (en banc)(28 U.S.C. § 1927). The court need not address the plaintiffs' sanction motion under K.S.A. § 60–211 because it is a Kansas procedural statute and, therefore, is not applicable to an action in federal court. *Schbley v. Gould,* No. 91–1420, 1996 WL 363043 at *3 (D.Kan., Jun 07, 1996).

ment are denied and the plaintiffs' motion to amend their reply (Doc. # 112) is granted.

**IT IS FURTHER ORDERED** that the Garnishee's motion for summary judgment (Doc. # 72) is granted and the plaintiffs' motions for summary judgment (Doc. # 68) and for sanctions and to strike (Doc. # 86) are denied. The plaintiffs' garnishment action is therefore dismissed.

**IT IS SO ORDERED.**