(21 P.3d 1011)
No. 84,476

ASELCO, INC., DR. S. JUSTIN KIM, RICK SOPHA, JOHN DICKESON, and SOS TELE-DATA, INC., *Appellant/Cross-appellee*, v. HARTFORD INSURANCE GROUP, *Appellee/Cross-appellant*.

Opinion filed April 13, 2001.

*Thomas R. Buchanan*, and *Kristie Remster Orme*, of McDowell, Rice, Smith & Garr, P.C., of Kansas City, Missouri, for appellant/cross-appellee SOS Tele-Data, Inc.

*Lee M. Baty*, of Field, Gentry & Benjamin, P.C., of Kansas City, Missouri, and *Theresa A. Otto*, *David C. Kennedy*, and *Brian J. Doherty*, of Field, Gentry & Benjamin, P.C., of Overland Park, for appellee/cross-appellant Hartford Insurance Group.

Before GERNON, P.J., KNUDSON and BEIER, JJ.

BEIER, J.: Plaintiff SOS Tele-Data, Inc. (SOS), appeals the district court's ruling granting summary judgment in favor of Hartford

Insurance Group (Hartford) in this declaratory judgment action and directing SOS to pursue a garnishment action. Hartford cross-appeals the district court's ruling that it is estopped from litigating issues already decided in a liability action against its insured and the court's finding that it participated in certain settlement negotiations.

The parties' various arguments require us to answer four questions:

- Did the district court abuse its discretion by dismissing SOS's declaratory judgment action and finding that a garnishment proceeding was a more appropriate avenue for SOS to pursue?
- Did the district court find that Hartford breached its duty to defend SOS's judgment debtor, Aselco, Inc. (Aselco)?
- What consequences follow from an insurance company's breach of its duty to defend and its failure to reserve its rights under the policy?
- Did the district court err in finding that Hartford attended settlement negotiations in the underlying litigation?

Hartford insured Aselco under a commercial general liability policy. Hartford is a foreign insurance corporation registered to do business in Kansas. Aselco is a Maryland corporation with its principal place of business in Maryland.

The Hartford policy applied to " '[a]dvertising injury' caused by an offense committed in the course of advertising [Aselco's] goods, products or services." It defined "[a]dvertising injury" to include: "injury arising out of . . . [m]isappropriation of advertising ideas or styles of doing business." The beginning date on the policy was August 1, 1994, and its ending date August 1, 1995.

Aselco had no insurance from August 1, 1995, until December 1, 1995. It then obtained insurance from Maryland Casualty Insurance Company (Maryland Casualty) until December 1, 1996.

In February 1996, SOS, a Colorado corporation with its principal place of business in Harbinger, North Carolina, filed a civil action against Aselco and several of its officers and employees in state court in Johnson County, Kansas. SOS alleged defendants had misappropriated information concerning telecommunications products from March 4, 1995, to December 31, 1997.

Aselco first notified Hartford of the lawsuit in June 1997. Hartford denied Aselco's tender of defense. Maryland Casualty also denied a duty to defend or indemnify Aselco but provided a defense under a reservation of rights.

Maryland Casualty filed this declaratory judgment action against Aselco in October 1997 to determine if it had a duty to defend in the underlying litigation. Aselco brought in Hartford as a third-party defendant, and SOS was granted leave to intervene. Aselco eventually filed a petition for bankruptcy in February 1998.

On August 14 and 15, 1998, SOS, Aselco, and Maryland Casualty participated in settlement negotiations in the underlying litigation. They reached a settlement agreement under which Maryland Casualty agreed to pay $300,000 to SOS, and Aselco agreed to an entry of judgment against it for $1.5 million.

A few days later, one judge of the district court presided over an abbreviated trial in which he took judicial notice of the volumes of depositions, pleadings, and exhibits filed in the case. Only one witness testified, and his testimony was limited to the amount of SOS's damages. As previously agreed by the parties, the judge found Aselco liable to SOS in the amount of $1.5 million for a pattern of continuing tortious conduct that began before March 4, 1995, and continued until at least December 31, 1997.

The judge also made the following pertinent findings:

"On plaintiff's claim for misappropriation, the Court finds that Aselco: 1) misappropriated SOS' advertising ideas or styles of doing business . . . f) [A]s part of defendant's advertising and marketing activities, defendant created marketplace confusion as to SOS, its goods and services, and its ability to provide those goods and services."

Two days later, Hartford was notified of the judgment against Aselco in the underlying litigation. Hartford did not attempt to file a motion for new trial or a motion to modify the judgment in the underlying litigation.

The next month, Maryland Casualty dismissed its portion of the declaratory judgment action against Aselco. SOS was granted leave to file a petition seeking indemnification against Hartford in the declaratory judgment action a month later, and the parties were realigned, with SOS and Aselco as the plaintiffs and Hartford as

the defendant. Hartford and Aselco later reached an agreement in which Aselco agreed to dismiss its petition in declaratory judgment and release all claims against Hartford for an undisclosed sum. This left only the parties to this appeal in the declaratory judgment action: SOS as plaintiff and Hartford as defendant.

Hartford filed a motion for summary judgment, arguing that SOS should be forced to pursue any remedy through a garnishment proceeding rather than through a declaratory judgment action. SOS sought partial summary judgment on the issue of whether Hartford was collaterally estopped from relitigating issues decided in the underlying litigation.

After two hearings on the cross-motions, a different district judge issued her ruling. She held that Hartford was bound by what she saw as the noncollusive judgment entered in the underlying litigation, including "a determination that one of the torts committed by Aselco involved advertising injury." She described its policy as an "occurrence policy" that "only provides coverage for acts or offenses which occur while the policy was in effect" and continued:

"The issue that is not resolved by this decision is a factual one. Clearly . . . [the] decision [of the judge who heard the underlying litigation] was that the tortious conduct took place over a period that far exceeded the period when Hartford's policy was in effect. His decision was that Aselco engaged in tortious conduct from March 4, 1995 to December 31, 1997. Of that approximately thirty-four month period, Hartford only insured Aselco until August 1, 1995, approximately five months.

"This Court's ruling is that the factual issue of how to apportion the total damages assessed by [the judge who heard the underlying litigation] between Hartford, Maryland Casualty, and Aselco, which acted as a self-insurer for a period of some four months, is a factual issue which should be determined in a garnishment proceeding. A garnishment proceeding is more appropriate to the determination of factual issues than is a declaratory judgment action, and [the judge who heard the underlying litigation] is much more conversant with the facts of the underlying case and will therefore be able to make a more informed decision about what portion of the total judgment is covered by Hartford's policy.

. . . .

". . . Obviously, the portions of the damage judgment for offenses occurring after August 1, 1995, are outside the coverage, and Hartford should not be held liable for that portion of the judgment."

SOS filed a motion to alter or amend judgment, arguing that the court erred in finding that Hartford was not responsible for those portions of the damages related to offenses occurring after August 1, 1995. The judge refused to amend her journal entry on that point.

### Declaratory Judgment Action v. Garnishment Proceeding

The entertainment of a declaratory judgment action rests within the discretion of the district court. *Wichita Computer & Supply, Inc. v. Mulvane State Bank*, 15 Kan. App. 2d 258, 260-61, 805 P.2d 1255, *rev. denied* 248 Kan. 999 (1991). Judicial discretion is not abused if reasonable persons could disagree as to the propriety of the decision of the district court. *State v. Ford*, 23 Kan. App. 2d 248, 251, 930 P.2d 1089 (1996), *rev. denied* 261 Kan. 1087 (1997). However, "[t]he discretion lodged within a court is not a boundless, but a judicial, discretion. It is a discretion limited to sound judgment to be exercised, not arbitrarily, but with regard to what is right and equitable under the circumstances and the law." *State v. Collins*, 195 Kan. 695, 700, 408 P.2d 639 (1965).

SOS argues the district court abused its discretion by forcing it to file a garnishment to obtain a remedy. It contends that this decision would unnecessarily prolong the litigation and that issues of insurance coverage are routinely determined in declaratory judgment actions. SOS is correct.

"Any person having an interest under a . . . written contract . . . or whose rights, status or other legal relations are affected by a . . . contract . . . may seek determination of any question of construction or validity arising under that . . . agreement and may obtain a declaration of rights, status or other legal relations thereunder [in a declaratory judgment action]." K.S.A. 60-1704.

In addition, the existence of a factual issue or issues is no obstacle to pursuit of a declaratory judgment action. Such issues "may be tried and determined in the same manner as issues of fact in other civil actions in the court in which the proceeding is pending." K.S.A. 60-1710. Despite Hartford's reliance on it, *Alliance Mutual Casualty Co. v. Bailey*, 191 Kan. 192, 198, 380 P.2d 413 (1963), is

not authority for the contrary proposition. It was decided before the effective date of the Kansas Declaratory Judgment Act (Act), K.S.A. 60-1701 *et seq.*, which governs this case, and even it includes language acknowledging that a declaratory judgment proceeding in which questions of fact are incidental to the determination of the main issue may be maintained. 191 Kan. at 200-01.

The Act also provides that the existence of another adequate remedy is no basis for rejecting or short-circuiting declaratory relief in cases where it is appropriate. K.S.A. 60-257.

The district judge relied primarily on a federal district court case to find that a garnishment would be a more appropriate avenue for SOS. Although it is true that the cited federal decision, *Sapp v. Greif*, 961 F. Supp. 243, 246, (D. Kan. 1997), stated: "Kansas law provides that a garnishment action is *the* proper procedure for determining a garnishee-insurer's liability" (emphasis added), the case it cited, *Bergeson v. Dilworth*, 749 F. Supp. 1555 (D. Kan. 1990), aff'd 959 F.2d 245 (10th Cir. 1992), relied in turn upon *Gilley v. Farmer*, 207 Kan. 536, 544, 485 P.2d 1284 (1971). 749 F. Supp. at 1558. In *Gilley*, our Supreme Court found only that "[u]nder the circumstances . . . garnishment was *a* proper procedure for determining the garnishee's indebtedness." (Emphasis added.) 207 Kan. at 544. Furthermore, neither *Sapp* nor *Bergeson* nor *Gilley* is authority on its facts for granting summary judgment to a defendant in a long-pending, fully developed and discovered declaratory judgment action so that a garnishment action addressing the same issues can be instituted against it by the same opponent.

Kansas appellate decisions also provide ample support for SOS's contention that insurance coverage issues are frequently determined in declaratory judgment actions. See *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, 907 P.2d 891 (1995) (insurers bringing declaratory judgment action seeking determination that policies did not provide personal injury protection or liability coverage); *State Farm Fire & Cas. Co. v. Martinez*, 26 Kan. App. 2d 869, 995 P.2d 890, *rev. denied* 269 Kan. 934 (2000) (insurer bringing declaratory judgment action against insured business owner to determine whether insured had coverage under business liability

policy); *State Farm Ins. Co. v. Gerrity*, 25 Kan. App. 2d 643, 968 P.2d 270 (1998), *rev. denied* 267 Kan. 890 (1999) (insurer seeking declaratory judgment on whether homeowner's personal liability umbrella policies provided coverage for claims arising from insured's sexual molestation of minor victim).

Here, SOS's original petition in the declaratory judgment action sought resolution of the question of whether Hartford bore a duty to defend and indemnify Aselco in the underlying litigation and definition of the contours of Hartford's obligation to pay the judgment entered against Aselco. SOS, as judgment creditor, clearly had a potential interest in the Hartford policy, and it was entitled to a determination of its legal rights to any insurance proceeds.

This determination could have been made through a declaratory judgment action or as a garnishment proceeding. Given that each was an avenue properly available to SOS, and that it selected declaratory judgment and proceeded to litigate its claims fully for more than 2 years, we view the district judge's belated decision to jettison that action in favor of a yet-to-be-filed garnishment as an abuse of discretion. It simply did not reflect "sound judgment to be exercised, not arbitrarily, but with regard to what is right and equitable under the circumstances and the law." *Collins*, 195 Kan. at 700. Even if it was true that the judge who heard the underlying litigation was more familiar with the facts of the case, the less drastic action of a transfer back into his division could have been pursued rather than forcing the litigants and counsel to make additional substantial expenditures of time and resources in a new action. This portion of the judgment granted below must be reversed.

### Breach of Duty to Defend

We must next address the question of whether the district court determined that Hartford breached its duty to defend Aselco. Hartford asserts that this issue remains to be decided.

SOS's motion for partial summary judgment argued that Hartford was collaterally estopped under Kansas law from relitigating issues from the underlying action because it failed to provide a defense to its insured. In Hartford's response to this motion, all of

its legal arguments proceeded from the assumption that there was a duty to defend in this instance. Hartford made several arguments as to why it was not bound by the underlying judgment and how it was still entitled to litigate coverage issues, but it did not argue what it now argues on appeal: that Maryland law controls on the issue of whether it had a duty to defend and that genuine issues of material fact remain on the existence of that duty.

At the summary judgment hearings, the judge stated: "In my mind, at least at this point, it's pretty clear to me that Hartford had a duty to provide a defense in this case, and they didn't do it." Hartford's counsel responded that the outcome on that issue would depend on whether Maryland or Kansas law applied, and he referred the judge to his brief. However, as mentioned, the choice of law issue was not addressed in the brief. Instead the brief's arguments proceeded from the assumption that such a duty existed and had been breached.

In its amended journal entry, the district court did not make explicit findings that Hartford had a duty to defend Aselco and breached it. Rather, the judge discussed the duty to defend and consequences that flow from its breach, citing *Patrons Mu. Ins. Ass'n v. Harmon*, 240 Kan. 707, 709-711, 732 P.2d 741 (1987), regarding collateral estoppel. The court went on to find, under Kansas law, that Hartford had the opportunity but did not provide a defense and that Hartford was bound by the judgment in the underlying litigation. What is not explicit is therefore implicit: According to the district judge, Hartford had a duty to defend and breached it. Otherwise, the decision that Hartford was bound by the underlying judgment would be factually unsupported.

We uphold these implicit findings for procedural and substantive reasons.

Procedurally, we need not address issues not raised before the district court. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999). As noted, Hartford did not rely on its choice of law argument below. In addition, Hartford attempts to raise the choice of law issue on appeal only in response to SOS's allegation that the judge misinterpreted the policy's wording. If it was interested in obtaining reversal of the judge's implicit findings

on the duty to defend and its breach, it should have cross-appealed on this issue. It did not do so. See *Otta v. Johnson*, 204 Kan. 366, 367, 461 P.2d 758 (1969).

Nevertheless, because these implicit findings are relevant to the next issue, we address their merits as well.

First, we observe that the district judge was correct in employing Kansas law to determine the existence of the duty to defend. "The law of the place of performance determines the manner and method as well as the legality of the acts required for performance." Restatement (First) of Conflict of Laws § 358, comment (a) (1934). Because Hartford's performance of its duty to defend would have taken place in Kansas, Kansas law governs the determination of the existence of the duty.

The district court was also correct in its application of Kansas law. In *Steinle v. Knowles*, 265 Kan. 545, 554, 961 P.2d 1228 (1998), our Supreme Court described when an insurer has a duty to defend:

> " 'Under the present code of civil procedure, an insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a "potential of liability," even if remote, under the policy, the insurer bears a duty to defend. *MGM, Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 202, 855 P.2d 77 (1993). The duty to defend rests primarily on the possibility that coverage exists, and the possibility of coverage must be determined by a good faith analysis of all information the insurer may know or could have reasonably ascertained. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer, the ultimate result controls the insurer's duty to defend. [Citation omitted].' " (Quoting *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 245-46, 865 P.2d 182 [1993].)

Here, it is clear that Hartford had some "potential of liability" under Aselco's policy. The petition alleged that Aselco had misappropriated SOS's trade secrets, including customer and supply lists. The evidence obtained in discovery indicated that Aselco had copied SOS's line card and put its letterhead in place of that of SOS. Line cards are used to inform potential purchasers of the products that suppliers sell, essentially functioning as catalogs. There was at least a "potential of liability" under the language of the Hartford policy, giving rise to a duty to defend under Kansas

law, and there is no dispute that Hartford refused to provide a defense to Aselco. The district judge's implicit findings in this regard are affirmed.

### Consequences of Breach of Duty to Defend and Failure to Reserve Rights

Because the district court has determined that Hartford bore a duty to defend and breached it, the court must then determine the character and extent of the consequences that flow from the breach and Hartford's failure to reserve its rights. Although the district judge began this analysis, in our view, she did not complete it, and we remand for a decision following the pattern outlined below.

Kansas state and federal courts have discussed three possible consequences of an insurer's breach of its duty to defend and its failure to reserve its rights under the policy.

#### 1. Damages in Excess of Policy Limits

The first consequence is that an insurer can be held liable for damages in excess of policy limits. In *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, Syl. ¶ 7, 804 P.2d 1012, *rev. denied* 248 Kan. 997 (1991), this court found:

> "An insurer who wrongfully declines to defend and who refuses to accept a reasonable settlement within the policy limits in violation of its duty to consider in good faith the interest of the insured in the settlement is liable for the entire judgment against the insured even if it exceeds the policy limits."

However, a failure to defend, without a settlement offer, does not alone justify judgment in excess of the policy limits. *George R. Winchell, Inc. v. Norris*, 6 Kan. App. 2d 725, 729, 633 P.2d 1174, *rev. denied* 230 Kan. 817 (1981). Thus, in determining whether a judgment in excess of policy limits is a possible or actual consequence of Hartford's breach, the court must decide if a settlement offer was in fact made and rejected in bad faith.

#### 2. Collateral Estoppel

Second, under Kansas law, as the district judge realized, an insurer is collaterally estopped from relitigating issues that were actually litigated and determined in the underlying litigation. In *Patrons*, the court found that, because Patrons had failed to provide

its insured with a defense or reserve its rights under its policy, it was collaterally estopped from relitigating the issue of the insured's intent in a subsequent action. 240 Kan. at 710.

The answers to three questions are pertinent to whether an insurer is bound by decisions on issues decided in the underlying litigation: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the claim is asserted a party or in privity with a party to the prior adjudication?" 240 Kan. at 711.

As we see it, Hartford was in privity with Aselco as its insurer, but there was a prior adjudication and final judgment in the underlying litigation on only two issues: (1) Aselco's liability to SOS for certain torts; and (2) the existence of consequential damages in the amount of $1.5 million. Under *Patrons*, Hartford is bound by these two determinations. We do not, however, agree with SOS that Hartford is also bound to a finding that the damages arose from an "advertising injury," as that phrase is employed in the Hartford policy. We do not believe that issue was actually litigated in the underlying case. The necessity of reaching the issue now is subject to our determination of whether Kansas law requires application of the third possible consequence in Hartford's situation.

### 3. *Equitable Estoppel*

The third of the possible consequences involves the applicability of the doctrine of equitable estoppel. Before we can ask the district judge to rule upon which policy defenses Hartford can invoke in this case, we must determine whether Kansas law prohibits an insurer in its position from raising any at all as a consequence of its failure to defend and reserve its rights.

Judge Lungstrum opined on his perceptions of Kansas authority on this point in *Johnson v. Studyvin*, 828 F. Supp. 877, 886-87 (D. Kan. 1993). In that case, he concluded that an insurer was not estopped from raising policy defenses:

"The Johnsons argue that, if given the opportunity, Kansas would adopt a rule of law that if an insurer breaches its duty to defend its insured from some claim, it is estopped from denying coverage for that claim. The court disagrees. The Johnsons have not cited any authority that Kansas courts have adopted or are

inclined to adopt such a rule. Such a rule is a minority position among the states. See R. Jerry, Understanding Insurance Law, § 111[6] at 581 (1987).

"Kansas courts have addressed situations in which this rule could have been applied if the courts were so inclined but have not done so. In *Spruill Motors Inc. v. Universal Underwriters Ins. Co.*[,] 212 Kan. 681, 512 P.2d 403 (1973), the insurer breached its duty to defend the insured but the Kansas Supreme Court dealt with the merits of the insurer's policy defenses anyway. A similar situation was present in *Snodgrass v. State Farm Mut. Auto Ins.*, 15 Kan. App. 2d 153, 804 P.2d 1012 (1991), in which a jury determined that State Farm had breached its duty to defend but on appeal, the appellate court considered State Farm's policy defenses concerning coverage. In either of these cases, had they chosen to do so, the court could have estopped the insurer from asserting its policy defenses after finding that it breached it duty to defend.

"Many courts have declined to follow such a rule because it has the potential of creating coverage where none has been contracted for. . . .

"Because Kansas courts have been presented with situations in which they could have estopped insurers who have breached their duties to defend from denying coverage and have not done so, this court will not find that Kansas courts would so hold. Although there may be arguably sound public policy grounds for doing so, that is a matter better left to the Kansas courts or legislature."

We must also consider the Kansas Supreme Court's clear statement in *Patrons* that the proper way for an insurer to protect both its insured's and its own interests in cases of conflict is to hire independent counsel for the insured and reserve all of its own rights under the policy. 240 Kan. at 712. Again, there is no dispute that Hartford took neither action here. Nevertheless, the court's actions in *Patrons* speak louder than its words. Despite the insurer's earlier refusal to provide a defense, the court considered the insurer's policy arguments and held that coverage was excluded.

Like Judge Lungstrum, we believe the cases decided to this point mean our Kansas Supreme Court would not adopt a bright line rule that insurers who fail to provide a defense and reserve their rights are inevitably equitably estopped from raising their coverage defenses. We are persuaded that an insured in SOS's position should not automatically reap coverage without limits. Hartford is therefore free to argue in the district court that, despite the breach of its duty to defend and its failure to reserve rights, Aselco did not contract for coverage for this loss.

The district judge will need to determine which coverage defenses are available and meritorious. Because these questions will require construction of the language of the policy, they must be decided under Maryland law. "In interpreting an insurance contract where there is a conflict of laws, Kansas follows the *lex loci* rule, and the law of the state where the contract is made governs." *Safeco Ins. Co. of America v. Allen*, 262 Kan. 811, Syl. ¶ 1, 941 P.2d 1365 (1997).

The district judge must first decide whether Aselco's tortious conduct was covered under Hartford's policy, *i.e.*, led to an "advertising injury." If the outcome on that question favors coverage, then the judge must also determine how a continuing course of conduct or injury was intended to be treated. In the underlying litigation, the court found a pattern of continuing conduct by Aselco that began before March 4, 1995, and continued until at least December 31, 1997. Applying Maryland law, the court must determine whether the Hartford policy was an occurrence or an offense policy. Likewise, it must determine under Maryland law whether damages should be apportioned or whether Hartford would be jointly and severally liable for the entire judgment. We agree with SOS that the district judge's previous statements related to these issues were at least premature.

### Attendance at Settlement Conference

Hartford also argues the district court erred in making the following finding:

"On August 14 and 15, 1998, a settlement conference on the Division 4 case was held. Counsel for SOS, Aselco and Maryland Casualty participated, and at the special insistence of Judge Elliott (Division 4), counsel for Hartford attended the settlement conference, but refused to participate in the negotiations or payment of the amount that was finally agreed upon."

Based on this finding of fact, the court later found that "[i]t is extremely difficult for Hartford to take the position that the judgment was collusive when Hartford's presence at the August 14 and 15 settlement conference was required by Judge Elliott. Hartford [has] only itself to blame if a compromise was reached that was not

to its liking, as it steadfastly refused to participate in the settlement."

The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999).

Hartford is correct that no evidence in the record supports a finding that Hartford was actually present at the settlement negotiations on the evening of August 14 and August 15, 1998. Following arguments in the declaratory judgment action on August 14, Hartford's counsel was informed by Aselco's counsel that Judge Elliott wanted to meet with all of the parties to discuss the status of the settlement negotiations in the underlying litigation. At the meeting, the new allegations against Aselco were recited orally and Judge Elliott told that parties that they should attempt to settle the matter. However, a later letter from SOS's counsel to Hartford's counsel indicates that Hartford was neither present nor participating at negotiations on August 14 and 15.

In that letter, dated August 20, 1998, SOS informed Hartford of the parties that participated in the negotiations "[l]ate Friday and early Saturday" and the various agreements that were reached. Had Hartford been present, this letter would not have been necessary. We therefore rule that substantial competent evidence does not support the quoted finding and reverse it. Should the absence of evidence be corrected on remand, so be it. If not, the district judge may decide she needs to revisit the collusion argument.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.